## M. A. BICKERSTAFF v. R. MARLIN.

1. GUARDIAN AND WARD. *Final settlement. Emancipation.*
   If a girl, at her marriage in her fifteenth year of age, gives her step-father, who has supported her, part of her estate, without her guardian's influence or collusion, the guardian may, while her whole estate is yet in his hands, accept the part so given in payment of a perfectly secured mortgage-debt which he holds against her step-father.

2. SAME. *Marriage of minor female. Settlement with guardian.*
   A female minor is emancipated by marriage so far as the reception of her estate from her guardian is concerned and a receipt therefor signed by herself and husband is as effectual as if she were adult; but the guardian cannot, under

guise of delivering her property, make a contract with her by which she gets something else.

3. SAME. *Guardian's commissions. Necessary expenses.*

If the ward's estate consists entirely of a pension from the United States Government, it is not improper to allow the guardian in his final settlement the amount which he paid in necessary fees in preparing the requisite proof to obtain the pension and in reducing it to possession, in addition to his commissions as guardian.

4. SAME. *Speculation in ward's estate. Interest.*

Although there is some evidence that the guardian loaned the ward's money at fifteen per cent interest per annum, yet the decree charging him legal interest on final settlement will not be disturbed, if the testimony on this point is conflicting and unsatisfactory, and he made the loan by order of the court.

APPEAL from the Chancery Court of Itawamba County.

Hon. L. HAUGHTON, Chancellor.

This appeal is from a final decree on the evidence dismissing a bill which sought to review a final settlement made by the appellee or guardian of the appellant's estate. Three items of the guardian's account were controverted, and they are stated with the facts relating to one of them in the opinion of the court. As to the interest on the ward's money, an order had been made for the guardian to loan it, and he accounted for ten per cent interest. He denied, and the appellant affirmed, that he received fifteen per cent; but, as he loaned money of his own at the latter rate, and lost some of the loans, the evidence for the ward was uncertain on this point, and was in conflict with other evidence. As to the estate, it consisted of a pension from the United States Government to the ward's father, and the expenses incurred by the guardian, in obtaining this pension after the father's death, were credited to himself in the guardian's account, and this was the third objection of the bill of review.

*Blair & Clifton,* for the appellant.

1. Contracting between a guardian and ward, by which the latter's estate is applied to a debt due the former from a stranger is illegal and cannot be countenanced. The theory of a gift by the ward to her step-father is untenable, because

she did not have the estate, and could not, therefore, deliver it, and a gift *inter vivos*, without delivery, is void.   2 Kent's Com. 438–440 (12 ed).   The money is still in the guardian's hands.   No gift by parol, without delivery is valid. *Marshall* v. *Tulgham*, 4 How. 439 ; *Carradine* v. *Collins*, 7 Smed. & M. 432 ; *Newell* v. *Newell*, 5 Geo. 401.   It is the guardian's debt which is paid.   He is the benefited person. It cannot be held that he is no party to the contract.   Undue influence was used by the girl's mother and step-father, and the guardian violated his duty in, permitting the transaction and taking a benefit therefrom.   Want of knowledge of the facts is nothing.   It was his business, as guardian, to know.   1 Story's Eq. Jur., sects. 307, 309, 317 ; 2 Kent's Com. 229, 230 (12 ed.) ; *Sullivan* v. *Blackwell*, 6 Cush. 742 ; *Mack* v. *Perry*, 7 Geo. 249.

2. Expenses incurred in obtaining the pension should not be allowed.   The guardian had his commissions, which fully compensated him.   Code 1880, sect. 2107 ; *Satterwhite* v. *Littlefield*, 13 Smed. & M. 305.

3. Funds of the estate were mingled with the guardian's money, and the whole loaned at fifteen per cent interest.   The note for the loan became the property of the ward.   *Coffin* v. *Bramlett*, 42 Miss. 206.   Trustees who speculate with the trust-fund must account for all the profit which results. *Powell* v. *Cooper*, 42 Miss. 228 ; *Anderson* v. *Gregg*, 44 Miss. 182 ; 1 Story's Eq. Jur., sect. 465, note 2 ; 2 Kent's Com. 229.   This money lender should not make interest from the estate of his ward.

*W. L. Clayton*, for the appellee.

1. If the guardian used the ward's money, he is chargeable with the highest legal rate of interest, and no more.   *Powell* v. *Cook*, 42 Miss. 221.   But the proof fails to show that the ward's money brought more than legal interest.   The evidence is uncertain and contradictory.   On all the testimony fairly construed, no reversal can take place upon this ground.

2. The ward had the right to give her step-father the money.

It was not the guardian's duty to interfere. The fact that the step-father used this money to pay a debt which he owed the guardian, does not make the latter, who knew nothing of the gift, a party to the original transaction. Mere formal matters connected with the drawing of the money have nothing to do with the question.

3. Expenses in drawing the pension must be deducted from it, for this is the cost of bringing the estate into possession. It did not exist as the ward's estate, but by reason of these services.

*L. Brame*, on the same side.

1. The proof does not sustain the claim for interest. At the appellant's marriage, the guardianship terminated. Code 1871, sect. 1218. After this the appellee was a trustee only. *Garland* v. *Normand*, 50 Miss. 238 ; *Bourne* v. *Maylium*, 3 Woods, 724.

2. The allowance for getting the pension was proper. This was part of the costs of the guardianship.

3. Money in the trustee's hands, subject to the beneficiary's order, was by her given to her step-father, without the trustee's knowledge. Nothing illegal appears in this. If, afterwards, the step-father elected to pay a debt he owed the trustee, instead of spending the money otherwise, this did not affect the transaction. This debt was amply secured, and the trustee, therefore, cannot be assumed to have used some secret influence. It was no benefit to him. Legality of a gift without delivery has nothing to do with this case. People usually transfer money by checks, orders and the like.

*L. Brame*, also made an oral argument.

*N. Cayce*, on the same side.

1. Even if the guardian loaned the ward's money at fifteen per cent interest, he is not chargeable with that rate, unless the proof shows that he collected it. On the contrary, however, the evidence is, that he lost many of the loans entirely.

2. The law required the things to be done in order to draw the pension for which charge is made. If the guardian had

not complied, the ward would have no estate. Tyler on Inf. & Cov. 71. The allowance is manifestly proper.

3. After the guardian had ceased to control the ward and her estate by reason of the relationship, he paid some of her money, which remained in his hands, as ordered by her. It is claimed that he should have inquired into the facts and refused to pay. Why? If she was doing an illegal thing it was not his affair. But, in fact, her act was both legal and honest. It was generous, as just, to compliment her mother's husband, who, though very poor, had charged her nothing for board during her infancy. Surely she, nor her late guardian, was required to look after the step-father's disposition of the present. If neither her husband nor his wife objected, the old man might have had a roaring time with his little windfall, and all in spite of the guardian.

CHALMERS, J., delivered the opinion of the court.

Miss M. A. Parker intermarried in her fifteenth year with R. M. Bickerstaff, having at the time in the hands of her guardian, Marlin, the sum of about $1,200. She expressed to her mother and step-father, by whom she had been reared from infancy, a desire to make them a present of $200, in recognition of their kindness to her, and in token of her affection for them. The step-father, who was very poor, was indebted in about the sum named to her guardian, the debt being evidenced by a promissory note secured by trust-deed on his crop and only horse, and he proposed that his step-daughter should carry out her kindly intentions by paying off this debt. She assenting, he mentioned the matter to the guardian, who at first expressed some doubt whether he would be allowed so to deal with his ward's estate; but, having consulted a lawyer and been advised that there was nothing illegal in it, notified the step-father of his readiness to carry out the scheme. Shortly thereafter, the ward, accompanied by her husband and step-father, repaired to the house of the guardian, who at the request of the parties, calculated the amount due on the note

and mortgage held by him, and having ascertained it, Mrs. Bickerstaff and husband executed and delivered to him a receipt, reciting that they had received from him that amount of money, and thereupon the note was delivered to the step-father, and the mortgage cancelled. The receipt was subsequently filed without objection in the annual and final settlements of the guardian with the Chancery Court, and was allowed to him as a valid voucher. Nearly two years after the approval of the final account, of which both husband and wife had notice, this bill of review was exhibited, attacking that settlement upon several grounds, but principally on account of the allowance of the receipt.

It is conclusively shown by the evidence that the guardian had no connection with the gift made by the ward to her step-father, nor with the manner in which it was accomplished, except to obey the directions of the parties as communicated to him. It is further shown, that he could have had no pecuniary interest in the matter, since his debt was then abundantly secured by the mortgage on the horse and the crop, which had been gathered, and was then in hand.

Under these circumstances there was nothing illegal or reprehensible in his conduct, and the receipt constituted a valid voucher and acquittance to him. A female minor is emancipated by marriage so far as the reception of her estate from her guardian is concerned, and a receipt therefor, signed by herself and husband is as valid and effectual for all the purposes of a receipt, as if she were adult. Her guardian cannot, under the guise of delivering her property, enter into any contract with her by which he shall deliver anything, save her own estate, and if he do so, any instrument signed by her, will be held good only so far as it evidences a reception of property, and void for all else.

But in the case in hand there was no element of contract between herself and guardian. He had nothing to do with the disposition which she was to make of her property after it passed from him to her, and discharged his duty to her when

he actually delivered it, transferred to one selected by herself and husband.   The law will not concern itself about the form in which the delivery takes place, provided it be a genuine delivery and the form is neither the suggestion nor to the advantage of the guardian.   We have jealously scrutinized the record to see if we could discover any undue interference of the guardian in the matter, or any possible advantage to be derived by him in its execution, and we have failed to detect anything more than a willingness on his part to accede to a plan, with the origin of which he had no connection.   If he had placed his ward's money in her own hands, and she straightway, in his presence, had passed it over to her father, the receipt executed would certainly have been valid, though it was shown that he knew of her intentions before he delivered the money.   So, also, if she and her husband had given to the step-father an order for the money, and the latter had accepted in satisfaction of the order his own note, it cannot be doubted that the order would have constituted a good acquittance to the guardian.   It would be sticking in the bark and hanging the rights of parties on quibbles to deny the same effect to the transaction as carried out.   It would be puerile to say that if the money had been produced and passed around between the parties, the receipt would have been good ; but although what was actually done had the same effect, in fact, it cannot have it in law. This would be establishing a distinction between law and common sense which does not exist.   The test must be the practical effect and good faith of the transaction, and not its outward form.   No form will avail if the substance is wanting,. and the form will be disregarded if the substance exists.

It was not improper, under the facts of this case, to allow the guardian for the expense of reducing the ward's estate to possession in addition to his commissions.   The evidence on. the question of the amount of interest received by him on his ward's money is too unsatisfactory and conflicting to authorize a disturbance of the ruling of the chancellor on that subject.

Decree affirmed.